UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RALPH MAUGHAN, DEFENDERS OF WILDLIFE, WESTERN WATERSHEDS PROJECT, WILDERNESS WATCH, and CENTER FOR BIOLOGICAL DIVERSITY,<br><br>              Plaintiffs,<br><br>   v.<br><br>TOM VILSACK, U.S. Secretary of Agriculture; TOM TIDWELL, Chief U.S. Forest Service; NORA RASURE, Regional Forester of Region Four of the U.S. Forest Service, KEITH LANNOM, Payette National Forest Supervisor; and VIRGIL MOORE, Director, Idaho Department of Fish and Game,<br><br>              Defendant. | Case No. 4:14-CV-0007-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court in the above-entitled matter are Plaintiffs' Motions for Temporary Restraining Order (TRO) and Preliminary Injunction. (Dkt. 8, 12.)[1] The Defendants have filed responses and Plaintiffs have replied. (Dkt. 19, 24, 27, 36.) Having fully reviewed the record herein, the Court finds that the facts and legal arguments are

---

[1] Also pending in this matter is a Motion to Intervene. (Dkt. 28.) The Court will take up that Motion at a later time in a separate order once the Motion is fully briefed.

MEMORANDUM DECISION AND ORDER - 1

adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this Motion shall be decided on the record before this Court without oral argument. The Court has reviewed the record and related filings and finds as follows.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are individuals and organizations interested in conservation and preservation of the wilderness character of the Frank Church-River of No Return Wilderness (Frank Church Wilderness) in Idaho.[2] Defendants are the relevant state and federal individuals and agencies responsible for managing the Frank Church Wilderness. The "Federal Defendants" named in this action are: Tom Vilsack, United States Secretary of Agriculture, Tom Tidwell, Chief of the United States Forest Service (USFS), Nora Rasure, Regional Forester of Region Four of the United States Forest Service, and Keith Lannom, United States Forest Service Supervisor for the Payette National Forest. (Dkt. 15.) The "State Defendant" is Virgil Moore, Director of the Idaho Department of Fish and Game (IDFG). (Dkt. 15.)

Plaintiffs have brought this action under the Administrative Procedure Act, 5 U.S.C. § 701 *et al.* (APA), against the Defendants alleging the IDFG's program for "wolf extermination" (the Program) is unlawful under the National Forest Management Act, 16 U.S.C. § 1604(i) (NFMA), the Wilderness Act, 16 U.S.C. § 1133(b), Special Use Permit

---

[2] The named Plaintiffs are Ralph Maughan, Defenders of Wildlife, Western Watersheds Project, Wilderness Watch, and Center for Biological Diversity. The Court will refer to the Plaintiffs collectively in this Order unless otherwise specified.

Regulations, 36 C.F.R. Pt. 251, and the National Environmental Policy Act, 42 U.S.C. § 4332(2)(C) (NEPA). (Dkt. 15.) The conduct challenged in this action is IDFG's hiring of a hunter-trapper in mid-December of 2013 to "completely eradicate two of the resident wolf packs" in the Frank Church Wilderness, the Golden Creek and Monumental Creek wolf packs, and the Federal Defendants' allowing/permitting of such activity. (Dkt. 15 at ¶ 45.) Plaintiffs challenge that the Defendants' did not undertake any environmental review, permitting review, or interagency consultation nor secure the requisite approval needed to undertake such a program in violation of the aforementioned statues and regulations. The Program, Plaintiffs allege, has resulted in seven grey wolves being killed since mid-December 2013. Plaintiffs have filed the instant Motions in order to halt further implementation of the Program until such time as the Court is able to rule upon the issues presented in this case.

## DISCUSSION

Plaintiffs' Motions ask that the Court enjoin the IDFG's ongoing wolf trapping and hunting program in the Frank Church Wilderness in Idaho until the claims raised in this action are resolved. The Defendants oppose the Motions on several grounds. (Dkt. 19, 24, 27.)

Injunctions and restraining orders are governed by Federal Rule of Civil Procedure 65. Under Rule 65(a), a preliminary injunction can be issued only on notice to the adverse party. Fed. R. Civ. P. 65(a)(1). Issuance of a TRO, on the other hand, requires the moving party to show that "it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party . . . can be heard in opposition...." Fed. R. Civ. P. 65(b). In this case,

Plaintiffs have moved for both a preliminary injunction and a TRO and Defendants have been served and allowed time to respond to the Motions.

The analysis required for a TRO and a preliminary injunction are "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001). Plaintiffs seeking an injunction must show: 1) a likelihood of success on the merits; 2) a likelihood of irreparable harm to them in the absence of preliminary relief; 3) that the balance of equities tips in their favor; and 4) that an injunction is in the public interest. *Winter v. Natural Res. Def Council*, 555 U.S. 7, 20–23 (2008). Alternatively, if Plaintiffs cannot meet the *Winter* test, they may still obtain an injunction where they can show there are "serious questions going to the merits," the balance of hardships tip sharply in their favor, there is a likelihood of irreparable injury, and the injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). This "sliding scale approach" allows a plaintiff to make a lesser showing of likelihood of success provided he will suffer substantial harm in the absence of relief. *Id.* at 1133. Under this approach, however, "serious questions going to the merits" requires more than showing that "success is more likely than not;" it requires a plaintiff to demonstrate a "substantial case for relief on the merits." *See Wildearth Guardians v. Mark*, No. 4:13-cv-00533-CWD, 2013 WL 6842771, at *2 (D. Idaho 2013) (quoting *Leiva–Perez v. Holder*, 640 F.3d 962, 967–68 (9th Cir. 2011).

1. **Likelihood of Success on the Merits**

In this case, Plaintiffs challenge the Defendants' failure to conduct the requisite environmental review, permitting review, and/or interagency consultation nor secure the

requisite approval needed to undertake the Program in violation of the aforementioned statues and regulations. Specifically, Plaintiffs challenge the USFS's decision allowing/approving the Program and IDFG's use the bunkhouse and airstrip to implement the Program without undertaking statutory review or requiring a special use permit.

### A. Administrative Procedures Act

The claims are brought under the APA which provides for judicial review of an agency's action. 5 U.S.C. § 702. The law provides that when "agency action, findings, or conclusions" are found to be "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" or "(D) without observance of procedure required by law" the reviewing court shall hold unlawful and set aside those actions, findings, and conclusions. *See Wildearth Guardians*, 2013 WL 6842771, at *2 (citing 5 U.S.C. § 706(2)). A court may set aside an agency action only if the court determines that the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "[T]he [Forest] Service is entitled to substantial deference to its interpretation of its own regulations." *Forest Guardians v. United States Forest Serv.*, 329 F.3d 1089, 1097 (9th Cir. 2003) (citing *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)).

The Federal Defendants counter that there is no final agency action in this case that is subject to judicial review. (Dkt. 24 at 5-7.) Similarly, the State Defendant argues the Plaintiffs have not challenged any final agency action and have not shown any agency's failure to take a discrete action that it is required to take. (Dkt. 27 at 5-8.) "To maintain a cause of action under the APA, a plaintiff must challenge 'agency action' that is 'final.'" *Wild Fish*

*Conservancy v. Jewell*, 730 F.3d 791, 800 (9th Cir. 2013) (quoting *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 61–62 (2004)). The Ninth Circuit has explained:

> The APA defines reviewable "agency action" to include "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). While this definition is "expansive," federal courts "have long recognized that the term [agency action] is not so all-encompassing as to authorize us to exercise judicial review over everything done by an administrative agency." *Fund for Animals, Inc. v. United States BLM*, 460 F.3d 13, 19 (D.C. Cir. 2006) (alteration in original) (internal quotation marks omitted). To qualify as "final," the action challenged must "mark the consummation of the agency's decisionmaking process" and "must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations and internal quotation marks omitted).

*Wild Fish Conservancy*, 730 F.3d at 800-01. Here, the Federal Defendants characterize their actions in question here as "day-to-day administrative communications." (Dkt. 24 at 5.) All of the Defendants maintain that no final agency action was taken by the USFS in regard to the program or the use of the bunkhouse and airstrip. (Dkt. 24, 27.) The Court finds that, at this stage, the Plaintiffs have not shown a likelihood of success on the merits or serious questions going to the merits on this point.

The actions of the Federal Defendants concerning the airstrip and the bunkhouse appear to be nothing more than the USFS District Ranger informing IDFG which public airstrips were open and that the USFS bunkhouse in the area was unused and available for IDFG's use. Since June of 2010, the state and federal agencies have in place an existing Memorandum of Understanding that they will share each other's facilities when they are not being used by the other agency. (Dkt. 25, Dec. Lannom at ¶ 7), (Dkt. 26 at FS000550-61),

(Dkt. 27, Ex. 1 at 2.) Under that agreement, IDFG contacted the USFS regarding the availability of the bunkhouse and the USFS confirmed it was available for use. (Dkt. 25, Dec. Lannom at ¶¶ 8 and 10), (Dkt. 26 at FS000815-16.) Similarly, the airstrip at issue is managed by the USFS but open to use by the general public which the USFS confirmed with IDFG. (Dkt. 9, Ex. 1 at 20-24) (Dkt. 25, Dec. Lannom at ¶ 6), (Dkt. 26 at FS000058, FS000815-16.) The Court finds that these activities do not appear to be final agency actions that are reviewable under the APA. Further, the USFS' review and consideration of the IDFG's program appears, at this time, to be a discretionary matter that is not subject to judicial review under the APA.

At this stage of the litigation, because there does not appear to be any reviewable final agency action the Court finds the Plaintiffs have not demonstrated a likelihood of success on the merits or any serious questions going to the merits. Accordingly, the Motions for TRO and Preliminary Injunction are denied.

### B. Substantive Claims

As to the substance of the claims themselves, the Court again finds that, at least at this stage, the Plaintiffs have failed to show a likelihood of success on the merits or serious questions going to the merits.

#### 1. NFMA

Plaintiffs' NFMA claim challenges that the IDFG's activity is inconsistent with the Forest Plan for the Frank Church Wilderness and, alternatively, that the USFS failed to act as required under § 706(1) of the APA. (Dkt. 15 at ¶¶ 52-59.) The NFMA consistency

requirement, 16 U.S.C. § 1604(i), requires that any agency action taken by the USFS be consistent with the governing forest plan. *Idaho Sporting Cong., Inc. v. Rittenhouse*, 305 F.3d 957, 962 (9th Cir. 2002) ("[A]ll management activities undertaken by the Forest Service must comply with the forest plan, which in turn must comply with the Forest Act." (citing *Inland Empire Pub. Lands Council v. United States Forest Serv.*, 88 F.3d 754, 757 (9th Cir.1996))). The action complained of here by Plaintiffs is that of IDFG, not the USFS. (Dkt. 27, Ex. 1 at 2) (Under the Memorandum of Understanding the USFS shall recognize the IDFG "as the agency with the primary authority, jurisdiction, and responsibility to manage, control, and regulate fish and wildlife populations on NFS lands.")[3]; *see also* (Dkt. 27, Ex. 2 at 1) (Dkt. 27, Ex. 3 at 1.) Therefore, NFMA's consistency requirement does not appear to apply here. That being the case, the USFS would not be under any requirement to act under NFMA and, therefore, there would be no violation of § 706(1) for the USFS having failed to act. *Norton*, 542 U.S. at 64 ("[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take. )

    **2.    Wilderness Act Claim**

On the Wilderness Act Claim, the Plaintiffs assert the Federal Defendants have failed its statutory and management duties to preserve the wilderness character of the Frank Church Wilderness and to protect the resident wildlife that contribute to that character and to follow

---

[3] The correlating portion of the Memorandum of Understanding applicable to the IDFG states that it shall recognize the USFS "as the agency responsible for the management of NFS lands in Idaho and the fish and wildlife habitats on these lands." (Dkt. 27, Ex. 1 at 4.)

its own process for reviewing proposals to remove "problem animals" from the wilderness. (Dkt. 15 at ¶¶ 60-66.). Specifically, Plaintiffs challenge the USFS' authorization allowing the IDFG to utilize the USFS' cabin and airstrip for purposes of carrying out the Program. (Dkt. 15 at ¶ 65.)

Again, no final agency action has been taken in regards to the Wilderness Act. From the current record, it appears the USFS has not yet determined whether or not IDFG's activities at issue here are in conflict with other resource use or wilderness values. The USFS has only begun to review the information submitted less than a month ago and not yet had an opportunity to weigh the competing interests and make a determination concerning whether the Program conflicts with other resource use and wilderness values. Further, as noted above, it does not appear that the USFS took any final action that is reviewable in regards to the IDFG's use of the bunkhouse and airstrip.

### 3. Special Use Permit Regulations

Plaintiffs' third cause of action alleges the USFS violated its own special use permit regulations by not requiring IDFG to obtain a special use permit before undertaking its wolf program. (Dkt. 15 at ¶¶ 67-72.) Again, Plaintiffs specifically point to the USFS' "authorization for IDFG to use [the USFS'] cabin and airstrip" without a special use permit. (Dkt. 15 at ¶ 71.) Defendants counter that a special use permit is not required under 36 C.F.R. § 251.50(e)(2) in this case because the activity is regulated by a State agency in a manner adequate to protect the lands and resources. (Dkt. 24 at 18.) Further, Defendants maintain that even if a special use permit is required, the USFS' determination as to how to enforce that

MEMORANDUM DECISION AND ORDER - 9

requirement is the subject of the USFS' discretionary enforcement authority and not subject to judicial review.

At this stage, the Court finds the IDFG's use of the bunkhouse and airstrip may not be subject to a special permit requirement because the IDFG program for managing wolves is a state regulated activity. *See* 36 C.F.R. § 251.50(e)(2); 16 U.S.C. § 528. If a special permit is required, the USFS has discretion as to how to enforce that requirement in the first instance. Here, the USFS has not yet reached a determination regarding the IDFG program let alone concluded that a special use permit is required.

### 4. NEPA

On the NEPA claim, Plaintiffs allege the USFS failed to complete an Environmental Impact Statement (EIS) and other "mandatory review processes" before allowing the IDFG program to proceed. (Dkt. 15 at ¶¶ 73-79.) Under NEPA, an agency is required to prepare an EIS for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). "'Major Federal actions' includes actions with effects that may be major and which are potentially subject to Federal control and responsibility." 40 C.F.R. § 1508.18. The Defendants counter that NEPA does not require an EIS in this case because there is no "major federal action." (Dkt. 24, 27.)

To determine whether the USFS has undertaken a "major federal action," the Court examines two factors: 1) the amount and nature of Federal Defendants' funding, and 2) the extent of Federal Defendants' involvement and control. *Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1102 (9th Cir. 2007). There is nothing in the record in this case indicating the USFS has

MEMORANDUM DECISION AND ORDER - 10

provided any new funding in support of the project or exercises any control of the project. To the extent it is argued the IDFG's use of the bunkhouse and airstrip are "funding," the Court finds such funding to be minuscule if any. The use of the bunkhouse is by virtue of the agencies' preexisting agreement and the airstrips are open for use by anyone including the general public.[4]

The Plaintiffs' claim here also alleges that the IDFG program required the issuance of a federal permit which constitutes a major federal action. (Dkt. 15 at ¶ 76.) It is true that "if a federal permit is a prerequisite for a project with adverse impact on the environment, issuance of that permit does constitute major federal action...." *Ramsey v. Kantor*, 96 F.3d 434, 444 (9th Cir. 1996) (citations omitted). Likewise, federal inaction can trigger NEPA's EIS requirement. *Id.* at 445. Every denial of a request to act, however, is not considered a "major federal action." *See Drakes Bay Oyster Co. v. Jewell*, No. 13-15227, 2014 WL 114699, at *12 (9th Cir. 2014); *State of Alaska v. Andrus*, 591 F.2d 537, 540 (9th Cir. 1979) (explaining that "even if the Secretary had some power under a delegation by Congress to stop the wolf-kill program ... his inaction was not the type of conduct that requires an environmental impact statement."); *Fund for Animals v. Thomas*, 932 F.Supp. 368, 371 (D.D.C. 1996) (holding that Forest Service policy of deferring to states on game-baiting was not a major federal action).

---

[4]The Memorandum of Understandings between the USFS and IFG explicitly state that under those agreements there is no authorization by any of the parties "to obligate or transfer funds. Specific projects or activities that involve the transfer of funds, services, or property among the parties require execution of separate agreements and are contingent upon the availability of appropriated funds." (Dkt. 27, Ex. 1-3.)

MEMORANDUM DECISION AND ORDER - 11

On this claim, the Court finds the Plaintiffs have not shown a likelihood of success or serious questions going to the merits of the claim. At this point, and for the reasons stated above, it does not appear that the USFS has undertaken a "major federal action" in regards to IDFG using the bunkhouse or airstrip, failing to require/enforce/issue any special use permits, or not compiling an EIS. Based on the record as it currently stands, no major federal action has occurred. The USFS has neither approved nor disapproved the IDFG activities in the Frank Church Wilderness.[5] Further, it does not appear that the USFS has failed to act. Instead, the USFS has just begun to review the matter and not yet had an opportunity to make any determination. As such, the Court concludes that the Plaintiffs have failed to show a likelihood of success on the merits or any serious questions going to the merits.

C. Conclusion

For the reasons stated above, the Court finds that the Plaintiffs here have failed to show a likelihood of success or any serious questions going to the merits of their claims. Accordingly, the Motions for TRO and Preliminary Injunction are denied. In so concluding, the Court makes clear that it is not ruling one way or another upon the merits of any of the claims. That determination must be made in later motions. The ruling in this Order is limited

---

[5] Even if it can be said that the USFS has "approved" the IDFG program, federal approval of another party's action does not, in and of itself, make that action federal unless the federal government undertakes some "overt act" in furtherance of that other party's project. *Defenders of Wildlife v. Andrus*, 627 F.2d 1238, 1244 (D.C.Cir.1980); *see also Rattlesnake Coal.*, 509 F.3d at 1102. On the current record, no such overt act has been shown.

to a preliminary determination of the claims using the standard of law applicable to these Motions based upon the record as it now stands.

## 2. Likelihood of Irreparable Harm

A plaintiff may obtain an injunction only where he or she can "*demonstrate* immediate threatened injury." *See, e.g., Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis in original). A possibility of irreparable harm is insufficient. Instead, Plaintiffs must establish that irreparable harm is likely, not just possible, in the absence of an injunction. *Alliance for the Wild Rockies*, 632 F.3d at 1131; *Winter*, 555 U.S. at 23. Irreparable harm has been described as "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction." 11A Wright & Miller, Fed. Prac. & Proc. § 2948. Where a plaintiff fails to demonstrate a likelihood of irreparable harm in the absence of preliminary relief, the court need not address the remaining elements of the preliminary injunction standard. *See Center for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir.2011).

In this case, Plaintiffs claim they are suffering ongoing, irreparable injury from the Program because it impairs the wilderness character of the Frank Church Wilderness. (Dkt. 36 at 15.) The wolf packs, Plaintiffs argue, are an intrinsic attribute of the wilderness character of the Big Creek/Middle Fork area of the Frank Church Wilderness. Plaintiffs represent that so far the hunter has killed at least seven wolves and will likely kill the remaining wolves in the packs before the Plaintiffs' claims are resolved. Further, Plaintiffs

assert that the Defendants' failure to review the program prior to its implementation deprives them of the procedural protections afforded by NEPA.

The State Defendant counter argues that the wilderness character of the Frank Church Wilderness includes not only the presence of wolves but also the historical presence of elk which have been particularly impacted by the "human intervention of wolf reintroduction" into the area. (Dkt. 27 at 13-14.) The Federal Defendants also argue that there has been no showing of a likelihood of irreparable harm in this case; noting the population growth of the number of wolves since their reintroduction into Idaho. (Dkt. 24 at 19.)

In considering both sides' arguments, the Court finds that the growth of the wolf population since their reintroduction into Idaho and the number of wolves presently living in Idaho cuts against a finding of a irreparable injury to the Plaintiffs. (Dkt. 19, Att. 1.) The evidence in the current record shows that the IDFG program for hunting wolves will not result in the loss of the species as a whole. Further, for the reasons stated above as to the substance of the claims, it does not appear that Plaintiffs have suffered an irreparable injury due to the Defendants' failure to undertake any mandatory environmental review. As such, the Court does not find that irreparable injury is likely absent the entry of an injunction in this case.

3.  **Conclusion**

Based on the foregoing, the Court finds that the Plaintiffs have not shown a likelihood of success on the merits or raised serious questions such that issuance of an injunction is warranted nor shown any irreparable injury. Accordingly, the Court will deny the Motions for TRO and Preliminary Injunction.

**ORDER**

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiffs' Motions for Temporary Restraining Order and Preliminary Injunction (Dkt. 8, 12) are **DENIED**.

DATED: **January 17, 2014**

Honorable Edward J. Lodge
U. S. District Judge